Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000916
31-AUG-2018
10:39 AM

NO. CAAP-15-0000916

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
RONALD S. FUJIYOSHI, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
HĀMĀKUA DIVISION
(CR. NO. 15-1-0808(4))


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

Defendant-Appellant Ronald S. Fujiyoshi (**Fujiyoshi**) appeals from the "Judgment and Notice of Entry of Judgment," (**Judgment**) filed on November 5, 2015, in the District Court of the Third Circuit, Hāmākua Division (**district court**).[1]

On April 20, 2015 Fujiyoshi was charged by Complaint with Obstructing under Hawaii Revised Statutes (**HRS**) § 711-1105(1)(a) and (5) (2014).[2] Following a bench trial, Fujiyoshi

---

[1] The Honorable Barbara Takase presided.

[2] HRS § 711-1105 provides:

§711-1105 **Obstructing.** (1) A person commits the offense of obstructing if, whether alone or with others and having no legal privilege to do so, <u>the person knowingly or recklessly</u>:

(continued...)

was found guilty of Obstructing in violation of HRS § 711-1105(1).

On appeal, Fujiyoshi contends that: (1) the complaint is defective for failing to allege an element of the offense charged; (2) his conviction cannot stand because the evidence is insufficient to sustain the charge; and (3) his conviction violates due process because the other similarly situated defendants were either acquitted or had their cases dismissed or subjected to motions of nolle prosequi by the prosecution.

## I. Background

On April 2, 2015, a number of individuals, including Fujiyoshi, were present on Mauna Kea Access Road protesting the construction of the Thirty Meter Telescope (**TMT**) atop Mauna Kea on the island of Hawai'i. Captain Richard Sherlock (**Captain Sherlock**) with the Hawai'i Police Department (**HPD**) was assigned to ensure safety due to the road possibly being blocked, and Officer Christopher Fukumoto (**Officer Fukumoto**) was assigned to go to the Visitors Center at the Mauna Kea access point on a report of protesters obstructing traffic. Captain Sherlock

---

(...continued)

    (a)    <u>Obstructs any highway or public passage</u>; or
    (b)    Provides less than thirty-six inches of space for passage on any paved public sidewalk.
    (2)    A person in a gathering commits the offense of obstructing if the person refuses to obey a reasonable request or order by a law enforcement officer:
    (a)    To move to prevent or to cease any activity prohibited under subsection (1); or
    (b)    To move to maintain public safety by dispersing those gathered in dangerous proximity to a public hazard.
    (3)    An order to move under subsection (2)(a), addressed to a person whose speech or other lawful behavior attracts an obstructing audience, is not reasonable if the obstruction can be readily remedied by police control.
    (4)    <u>A person is not guilty of violating subsection (1) solely because persons gather to hear the person speak or because the person is a member of such a gathering</u>.
    (5)    <u>Obstructing is a petty misdemeanor if the person persists in the conduct specified in subsection (1) after a warning by a law enforcement officer; otherwise it is a violation</u>.

(Emphasis added.)

2

warned individuals who were on the roadway that it is a public roadway, that it had to be kept open for vehicles or those who wanted to use it, and asked them to leave the roadway or they would be arrested for obstructing. Several of the protesters moved, but Fujiyoshi and some others did not. Fujiyoshi was subsequently arrested.

On April 20, 2015, Plaintiff-Appellee State of Hawai'i (**State**) filed a Complaint against Fujiyoshi which alleged:

> On or about the 2nd day of April, 2015, in Hamakua, County and State of Hawai'i, RONALD FUJIYOSHI, acting alone or with others and having no legal privilege to do so, did knowingly or recklessly obstruct any highway or public passage and persisted in said conduct after warning by a law enforcement officer, thereby committing the offense of Obstructing, in violation of Sections 711-1105(1)(a) and (5), Hawai'i Revised Statutes, as amended.

On November 5, 2015, following a bench trial at which Fujiyoshi represented himself *pro se*, the district court found Fujiyoshi guilty of Obstructing under HRS § 711-1105(1). The district court entered its Judgment on the same day.

## II. Standard of Review

### A. Sufficiency of the Complaint

"Whether a charge sets forth all the essential elements of a charged offense is a question of law which we review under the *de novo*, or right/wrong, standard." State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (quoting State v. Wells, 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995) (internal brackets, citations, ellipses, and quotation marks omitted).

### B. Sufficiency of the Evidence

> Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction. . . . The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Nakamitsu, 140 Hawai'i 157, 164, 398 P.3d 746, 753 (2017) (quoting State v. Richie, 88 Hawai'i 19, 33, 960 P.2d

1227, 1241 (1998))(internal brackets omitted). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Richie, 88 Hawaiʻi at 33, 960 P.2d at 1241 (citation omitted).

## C. Due Process

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." State v. Vaimili, 135 Hawaiʻi 492, 499, 353 P.3d 1034, 1041 (2015) (quoting State v. Pratt, 127 Hawaiʻi 206, 212, 277 P.3d 300, 306 (2012) (citations and internal quotation marks omitted)).

## III. Discussion

## A. Sufficiency of the charge

Fujiyoshi did not challenge the sufficiency of the Complaint in the district court and instead raises this issue for the first time on appeal. The Hawaiʻi Supreme Court has adopted the "Motta/Wells post-conviction liberal construction rule" (**Motta/Wells rule**) for cases in which the sufficiency of an oral charge, complaint, or indictment is challenged for the first time on appeal. Wheeler, 121 Hawaiʻi at 399, 219 P.3d at 1186 (citing State v. Motta, 66 Haw. 89, 90, 657 P.2d 1019, 1019-1020 (1983); Wells, 78 Hawaiʻi at 381, 894 P.2d at 78).

In Motta, the supreme court explained that the "adoption of this liberal construction standard for post-conviction challenges to [complaints] means we will not reverse a conviction based upon a defective [complaint] unless the defendant can show prejudice or that the [complaint] cannot within reason be construed to charge a crime." 66 Haw. at 91, 657 P.2d at 1020; see also State v. Mita, 124 Hawaiʻi 385, 390, 245 P.3d 458, 463 (2010) (stating that a charge "must be worded

4

in a manner such that the nature and cause of the accusation could be understood by a person of common understanding. . . . A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process.") (internal brackets, citations, and quotation marks omitted). Put differently, the sufficiency of the charging instrument is measured, *inter alia*, by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" Wells, 78 Hawai'i at 379-80, 894 P.2d at 76-77 (citations and internal quotation marks omitted) (brackets in original).

Here, we conclude that the Complaint was sufficient. HRS § 711-1100 (2014) provides the definitions for HRS Chapter 711 and defines "Obstructs" as follows: "renders impassable without unreasonable inconvenience or hazard." By comparison, the definition of "obstruct," as provided by Black's Law Dictionary, states:

> 1. To block or stop up (a road, passageway, etc.); to close up or close off, esp. by obstacle <obstruct the runway>. 2. To make difficult or impossible; to keep from happening; hinder <to obstruct the peace process>. 3. To cut off a line of vision; to shut out <the new construction obstructs our view of the road>.

*Obstruct*, Black's Law Dictionary 1246 (10th ed. 2014).

We disagree with Fujiyoshi's claim that the Complaint was defective for failing to define "obstruct." Rather, we conclude that the term "obstruct" comports with its commonly understood definition, and that its common meaning encompasses the component parts of its statutory definition. See Mita, 124 Hawai'i at 393, 245 P.3d at 466;[3] cf. Wheeler, 121 Hawai'i at

---

[3] In Mita, "animal nuisance" was defined by ordinance as:

> includ[ing] but not... limited to any animal, farm animal or poultry which:

(continued...)

394-96, 219 P.3d at 1181-83 (holding that the term "operate" has been statutorily defined in a manner that does not comport with its commonly understood definition, thereby rendering the underlying oral charge, which did not define the term, insufficient).[4]

## B. Sufficiency of the evidence

Fujiyoshi next argues that there was insufficient evidence presented at trial to convict him of Obstructing because: (1) there was no substantial evidence that his alleged refusal to clear the roadway rendered the roadway "impassable without unreasonable inconvenience or hazard" per the statutory definition of "obstruct" under HRS § 711-1100; (2) he had a "legal privilege" to gather in the roadway and listen to another protester speak under HRS § 711-1105(4); (3) there was no substantial evidence that he actually heard the warning given to

_____

(...continued)

> (a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;
>
> (b) Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7-2.4(c) of this article; or
>
> (c) Notwithstanding the provisions of [Hawai'i Revised Statutes (HRS)] Section 142-75 [governing the duties and liabilities of an owner of a dog that has bitten another person] or any other applicable law, bites or stings a person.

124 Hawai'i at 387, 245 P.3d at 460 (citing Revised Ordinances of Honolulu § 7-2.2 (1990 & Supp. No. 6, 2-05)). The supreme court held that this definition was consistent with the term's commonly understood meaning, and therefore the charge against the defendant provided her with fair notice of the offense charged. Id. at 391, 245 P.3d at 464.

[4] As discussed in Wheeler, "operate" was defined by statute as "to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway or to navigate or otherwise use or assume physical control of a vessel underway on or in the waters of the State." 121 Hawai'i at 391, 219 P.3d at 1178 (citing HRS § 291E-1 (2007)). The supreme court held that the term was neither unmistakable nor readily comprehensible to persons of common understanding because its statutory definition did not comport with its commonly understood definition. Id. at 394, 219 P.3d at 1181.

the protesters by the police to clear the roadway, and thus he did not knowingly or recklessly persist in obstructing the roadway; and (4) there was no substantial evidence that the police could not have remedied the traffic blockage by simply re-routing traffic through one lane of the Mauna Kea Access Road, rather than arresting the protesters.

1. **"Impassable without unreasonable inconvenience or hazard"**

At trial, Captain Sherlock testified that the protesters blocked construction from happening at the TMT construction site on top of Mauna Kea and that police were called to the location of the protest to ensure that the road remains safe. Captain Sherlock further testified that, after he gave his initial warning to the fifty to eighty protesters to get off the road, the protesters who remained prevented cars from safely traveling on Mauna Kea Access Road. Captain Sherlock also testified that those remaining in the public passage placed their safety at risk.

In turn, Officer Fukumoto testified that Fujiyoshi was one of the protesters who did not exit the road following Captain Sherlock's warning. Officer Fukumoto testified that Fujiyoshi "was located in the middle of the roadway on the side of the road going towards the summit" and that Fujiyoshi's location in the roadway prevented vehicles from traversing this part of Mauna Kea Access Road. During cross-examination, Officer Fukumoto stated that he made contact with Fujiyoshi while Fujiyoshi was standing "in the middle of the road."

Viewed in a light most favorable to the State, as is required in reviewing sufficiency of the evidence to support a conviction, see Nakamitsu, 140 Hawai'i at 164, 398 P.3d at 753, there was substantial evidence to support a finding that Fujiyoshi's presence in the roadway rendered it impassable without unreasonable inconvenience or hazard.

2. **Defense under HRS § 711-1105(4)**

Fujiyoshi argues that he had a "legal privilege . . . [as] a member of a peaceful gathering . . . . listening to Lanakila

7

explaining to [Captain] Sherlock the sacredness of Mauna Kea" thereby precluding his conviction as a matter of law pursuant to HRS § 711-1105(4), the United States Constitution, and the Hawaiʻi Constitution. The evidence adduced at trial shows that Fujiyoshi was a participating member of a gathering on Mauna Kea, but not that he was present solely to hear anyone speak as required under HRS § 711-1105(4).

Both affirmative and non-affirmative defenses place an "initial burden on the defendant to come forward with some credible evidence of facts constituting the defense, unless, of course, those facts are supplied by the prosecution's witnesses." HRS § 701-115 cmt (2014).[5]

The defense under HRS § 711-1105(4) provides that "[a] person is not guilty of violating subsection (1) solely because persons gather to hear the person speak or because the person is a member of such a gathering." (Emphasis added). The commentary to the Obstructing statute provides further clarity to this exception:

---

[5] HRS § 701-115 (2014) provides:

> §701-115 Defenses. (1) A defense is a fact or set of facts which negatives penal liability.
>     (2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:
>     (a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt; or
>     (b) If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.
>     (3) A defense is an affirmative defense if:
>     (a) It is specifically so designated by the Code or another statute; or
>     (b) If the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence.

> Although obstructing was formerly covered by the disorderly conduct statute, it raises certain important problems which indicate that it should have separate treatment. Primarily the problems relate to free speech and types of expressive conduct which, under the aegis of free speech, are constitutionally protected. Normally, the act of obstructing a public highway presents a great public inconvenience and serves no useful purpose. However, where the obstruction is caused by a crowd listening to a speaker, or even by a crowd protesting some official action, important goals are served by leaving the group as free from restriction as possible.
>
> . . . .
>
> Subsection (1) defines obstructing as knowing or reckless obstruction of any highway or public passage. "Obstructs" is defined in § 711-1100 as "renders impassable without unreasonable inconvenience or hazard." This conduct constitutes a violation, and if the defendant fails to heed a warning by a peace officer, it may be treated as a petty misdemeanor. However, <u>subsection (4) makes clear that a person does not violate subsection (1) solely because of the fact that people gather to hear the person speak, or because the person is a member of such a gathering</u>.

HRS § 711-1105 cmt. (Emphasis added).

Neither the penal code nor HRS § 711-1105 specifically designate the defense under HRS § 711-1105(4) as an affirmative defense or require that a defendant must prove by a preponderance of the evidence that he or she was a speaker or listener in a gathering in order to establish the defense. Therefore, the defense under HRS § 711-1105(4) is not an affirmative defense.

> In the case of defenses which are not affirmative, the defendant need only raise a reasonable doubt as to the defendant's guilt. The other side of the coin is that the prosecution must prove beyond a reasonable doubt facts negativing the defense. The prosecution in fact does this when the jury believes its case and disbelieves the defense.

HRS § 701-115 cmt. On appeal, the question is thus whether there is substantial evidence to support the district court's determination that the HRS § 711-1105(4) defense did not apply in this case.

At trial, Fujiyoshi cross-examined Captain Sherlock, and asked:

> [Fujioyshi]   Do you remember Lanakila[6] explaining to you the sacredness of Mauna Kea before you arrested people?
>
> . . . .
>
> [Captain Sherlock]   Yes.

_____

[6] Lanakila is not further identified in the record.

> [Fujiyoshi]   And you -- okay.  Do you also remember hearing the pu[7] and the chanting and singing while you were -- before the arrests?
>
> [Captain Sherlock]   Yes.

Additionally, Fujiyoshi's defense consisted of his testimony read from a prepared written statement which was later admitted into evidence.  Fujiyoshi testified, in relevant part:

> I will attempt to argue that on April 2nd, 2015, I was participating in a religious spiritual activity and that I'm guaranteed the right to participate in this religious spiritual activity, and my right is sanctioned by legal, religious and more reasons.
>
> . . . .
>
> In my present capacity as the pastor of the Olaa First Hawaiian Church, although we consider our church to be a Hawaiian church, people of many different ethnic backgrounds are members.  Everyone, whatever background or faith, is welcome to attend.  We observe a number of religious protocol during our services.  We recite the Lord's prayer in Hawaiian.  We sing hymns.  We greet one another saying the peace of God be with you.  We ring our bell to signal the beginning of our service and to call the children back into the church before we have holy communion.
>
> The protocol I observed on Mauna Kea on April 2nd, 2015, seemed very similar.  There was a blowing of the pu, chanting, singing and greeting each other with honi.[8]

In rendering its decision, the district court found that, "[i]n this case nobody was being prohibited from practicing religion.  If you had moved off of the roadway and done that, you would not have been arrested."  Moreover, the evidence in the record does not indicate that Fujiyoshi was on the roadway solely as a member of a gathering to hear someone speak.  In short, the evidence does not support a defense under HRS § 711-1105(4).

### 3.   Whether Fujiyoshi heard the warning

On direct examination, Captain Sherlock testified as follows:

> [The State]   On April 2nd, 2015, did you issue a warning to persons on Mauna Kea Access Road?

---

[7]   The word "pū" is defined as a "[l]arge triton conch or helmet shell (*Charonia tritonis*) as used for trumpets[.]"  Pukui & Elbert, Hawaiian Dictionary 344 (rev. ed. 1986) (**Hawaiian Dictionary**).

[8]   "Honi" means "[t]o kiss; a kiss; formerly, to touch noses on the side in greeting."  Hawaiian Dictionary at 79.

10

[Captain Sherlock]    Yes, I did.

. . . .

[The State]    And can you please state for the court the warning that you provided to individuals on Mauna Kea Access Road at or near the Visitors Center?

[Captain Sherlock]    The warning was it's a public roadway. We have to keep it open for vehicles or people who wanted to use it. We understood that they were demonstrating against the telescope being built, but at a certain point we asked them to leave the roadway, and if they did not, they would be arrested for obstructing.

. . . .

[The State]    Did it appear that the persons you gave the warnings to heard you?

[Captain Sherlock]    Yes.

On cross-examination, Fujiyoshi did not question Captain Sherlock about the warning or otherwise attempt to show that Fujiyoshi did not hear Captain Sherlock's warning.

Viewed in a light most favorable to the State, there was substantial evidence to support a finding that Fujiyoshi heard Captain Sherlock's warning.  See Nakamitsu, 140 Hawai'i at 164, 398 P.3d at 753.

### 4.  Police remedy

Fujiyoshi's argument made pursuant to HRS § 711-1105(3) is not pertinent insofar as subsection (3) applies to offenses under HRS § 711-1105(2)(a).  Here, Fujiyoshi was charged and convicted under HRS §§ 711-1105(1)(a) and (5).

### C.  Due process

Fujiyoshi alleges that he was denied due process arguing as follows:

[i]n the instant case, the prosecutor has fulfilled her duty as a minister of justice by seeking, and obtaining, dismissals of the Obstructing charge against 16 similarly situated defendants.  Had Mr. Fujiyoshi's trial occurred after [Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 363 P.3d 224 (2015)], he surely would have received the same disposition as all of the other defendants that followed his trial.  Accordingly, in order to actualize the fundamental concepts of due process, justice, fair play and decency, Mr. Fujiyoshi's judgment of conviction must be vacated and set aside, and the matter remanded to the district court for further proceedings.

11

(Footnote omitted). Fujiyoshi additionally requests that this court take judicial notice of twenty-two cases originating from the district court to support his contention of being a "similarly situated" defendant.

The record in this case does not provide information regarding the other district court cases for which Fujiyoshi requests this court to take judicial notice. In particular, it is unclear why other cases may have been resolved differently than this case. Even if we could access the twenty-two other cases, we deem it inappropriate to do so here. See 29 Am. Jur. 2d Evidence § 149 (2008) ("Judicial notice should be limited to the fact of the record's existence, rather than to any facts found or alleged within the record of another case, even though the contents of those records may be known to the court, and even though the causes are between the same parties, where each is an independent and separate proceeding.").

### IV. Conclusion

Based on the above, the "Judgment and Notice of Entry of Judgment" entered on November 5, 2015, in the District Court of the Third Circuit, Hamakua Division, is affirmed.

DATED: Honolulu, Hawaiʻi, August 31, 2018.

On the briefs:

Hayden Aluli,
James M. Dombroski,
for Defendant-Appellant.

Dale Yamada Ross,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12